THOMAS, Judge,
concurring in part and dissenting in part.
I concur with the majority of this court insofar as it concludes that the constitutional argument raised by H.H.J. (“the father”) on appeal is not properly before this court because it is not the same argument as the argument raised in his post-judgment motion. 114 So.3d at 44. I also concur with the majority of this court insofar as it concludes that the Marion Circuit Court erred by ordering that the father’s visitation should be left entirely within the discretion of H.R.J. (“the child”). 114 So.3d at 44. However, my review of the record leads me to the conclusion that the trial court also erred by forbidding the presence of C.E.C. (“the second wife”) during the father’s visitation with the child. No one disputes that a material change of circumstances has occurred or that K.T.J. (“the mother”) should have been awarded primary custody of the child. The question is whether the highly unusual restrictions placed on the father’s visitation are in the best interest of the child. I am not convinced that they are.
The record indicates that the father has been exercising his visitation with the child on alternating weekends at the father’s parent’s lake house because of the trial court’s original prohibition against the child’s being in the presence of the second wife. The trial court’s November 21, 2011, judgment again forbade the child from being in the presence of the second wife, and it added an additional limitation: the trial court restricted visitations to the father’s residence.[3] The apparent effect of the judgment is that the second wife is required to move out of the residence every other weekend or the visitation cannot occur.
The trial court included a finding in its November 21, 2011, judgment that “[t]he minor child would be caused to suffer emotionally and it would be detrimental to his well being if he were forced, against his will, to be in the presence of [the second wife].” As the main opinion notes, the child had never met the second wife. 114 So.3d at 41. I cannot agree that the trial court had sufficient evidence before it to support its finding; therefore, I conclude that the trial court exceeded its discretion and that its judgment imposing the restrictions at issue is due to be reversed.
Certainly a trial court may set conditions on visitation to protect a child when there are allegations of abuse or that a caregiver has psychological problems. See, e.g., I.L. v. L.D.L., 604 So.2d 425, 428 (Ala.Civ.App.1992)(reversing a trial court’s judgment granting unsupervised visitation to a noncustodial parent who had allegedly sexually abused the child); Y.A.M. v. M.R.M., 600 So.2d 1035, 1037 (Ala.Civ.App.1992) (same); Watson v. Watson, 555 So.2d 1115, 1117 (Ala.Civ.App.1989)(see discussion infra); and Caldwell v. Fisk, 523 So.2d 464 (Ala.Civ.App.1988)(affirming a trial court’s judgment requiring the noncustodial parent’s visitation to be supervised because he suffered from a psychological or emotional problem). Such concerns are not present in this case. I conclude that the evidence presented fails to indicate that the second wife’s presence has ever been, or ever will be, harmful to the child, although, as the main opinion *46 points out, the child does not -wish to visit the father if the second wife is present. 114 So.3d at 39.
In Hagler v. Hagler, 460 So.2d 187 (Ala.Civ.App.1984), the children, who were 8 and 11 years of age, claimed that they were afraid of the father and did not desire to visit him. Hagler, 460 So.2d at 188. We said that “a trial court may, and normally should, require visitation even if it is forced upon a child” if it “is reasonably satisfied from the evidence that a child is merely parroting the wishes of the custodial parent, or that the child is too immature to form a considered opinion, or where the child expresses fears or unwillingness to visit without any reasonable basis or foundation.” Id. at 189. The main opinion states that the trial court was presented with and rejected the arguments that the child was manipulated by the mother — or was “parroting” her wishes — and that the child’s reluctance to be in the second wife’s presence was unreasonable. 114 So.3d at 40. I do not arrive at the same conclusion.
The trial court did not reject the argument that the mother had manipulated the child. Quite the opposite, it imposed a $5,000 bond so that she would not continue to manipulate the child. The fact that the trial court determined that she had complied with the bond requirements cannot undo the damaging effects of the past manipulation. Furthermore, my review of the record does not reveal any evidence indicating that the child had formed a considered opinion regarding the consequences of refusing to be in the presence of the second wife. Although the child may be a mature young person, the most mature 15-year-old child cannot be expected to comprehend the legal, social, financial, or emotional implications of a strained relationship with a parent. Finally, there was no testimony regarding any reasonable basis for the child’s unwillingness to be in the presence of the second wife. I do not, as apparently does the majority of this court, see this case a an example of the rare and extreme case when the trial court has evidence proving that a child who is unwilling to visit an otherwise fit parent would suffer adverse psychological damage. See id. Thus, I believe the conclusion of this court regarding the father’s visitation is in. conflict with our decisions in Hagler and Watson v. Watson, 555 So.2d 1115 (Ala.Civ.App.1989).
In Watson, we determined that the trial court had ample evidence to support its determination that visitation was not in the best interest of the child because the child feared visiting with a noncustodial parent who had suicidal tendencies and had been diagnosed with depression and paranoia. 555 So.2d at 1116-17 (citing Hagler, 460 So.2d at 189). We reiterated:
‘While it is a rare and exceptional case, there are circumstances where it is reasonable, and in the best interests of the child, to not be required to visit a non-custodial parent because of his unwillingness or fear to do so. It is an extreme decision that restricts an otherwise relatively qualified parent from visiting his child.”

Id.

I am not persuaded by the evidence in the record that the trial court’s extreme decision to restrict the father’s visitation to alternating weekends, only at the father’s residence, and only outside the presence of the second wife is in the best interest of the child. I come to this conclusion in light of the testimony presented to the trial court.
The mother testified that the father had made efforts to repair his relationship with the child, that the child was responding, and that the child was willing to try to have a relationship with the father. The trial judge stated to the child: “But I can *47 tell you at every turn your daddy has fought tooth and nail, at least in front of me[,] to be involved in your life.” The mother said that she desired for the father and the child to have a “healthy relationship”; however, she said that their relationship at the time of the trial was unhealthy due to the parties’ divorce and the father’s marriage to the second wife.
Notably, the father and the mother testified regarding the child’s most recent visit with the father. The father said that he was seeing improvement in the child’s attitude and that the child had enjoyed his time with the father’s mother and the father’s nephew. The father said: “He’s coming around.” The mother said:
“I think [the child’s attitude toward the father and his family] might change. Like [the father] was saying, he has— [the child] has called [the father’s nephew], [The father’s nephew] and [the child] have played disc golf a couple of times, maybe three or four times here lately. I think that’s a start. [The child] came home and he told me that, well, we went to [the father’s mother’s] house this weekend. [The mother] said, well, that’s good. Did you have a good time? Well, at least I had somebody to talk to me. [The father’s mother] talked to me and [the father’s nephew] talked to me. You know, so I think it’s a start.”
Because I believe the court should encourage the natural and proper relationship of a parent and child after the breakdown of a marriage, even when one parent is the sole cause of the breakdown, I dissent as to that portion of the main opinion that affirms the trial court’s judgment insofar as it prohibits the presence of the second wife during visitation between the father and the child.

. The father has not appealed regarding the restricted location of the visitations.